*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REBECCA M. MOSES,

      Plaintiff-Appellant/Third-Party
      Defendant,

and

HENRY M. NIRENBERG, Receiver,

      Plaintiff,

v

DAVID Z. MOSES,

      Defendant-Appellee/Third-Party
      Defendant,

and

TZEDEK COMPANY LLC, LEXIFORD
PROPERTIES LLC, WATERTON PROPERTIES
LLC, and DAVID WILKINSON,

      Defendants/Third-Party Plaintiffs,

and

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

      Third-Party Defendant.

UNPUBLISHED
April 14, 2026
10:04 AM

No. 373435
Oakland Circuit Court
LC No. 2020-503106-DM

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

Plaintiff, Rebecca Moses, appeals from the trial court's judgment of divorce entered after an arbitration award. On appeal, plaintiff challenges the trial court's denial of her motion to set

-1-

aside the arbitration ruling as being inconsistent with Michigan law, and additionally argues that the trial court's entry of the judgment of divorce violated her right to due process. For the following reasons, we disagree with plaintiff and therefore affirm.

## I. BACKGROUND AND FACTS

Plaintiff filed a complaint for divorce from defendant, David Moses, on October 12, 2020, approximately eight years into the parties' marriage. Soon after, the parties stipulated to an order to maintain the financial status quo and to a mutual injunction regarding their assets. Defendant also filed a countercomplaint for divorce on October 19, 2020.

On June 9, 2021, the parties stipulated to submit all issues in the divorce to binding arbitration with attorney Kurt Schnelz. They agreed that the arbitrator's decisions would be binding and that a judgment of divorce consistent with the arbitrator's decisions and/or awards would enter. They also waived their right to a formal arbitration hearing and agreed to conduct the arbitration hearing informally, in an order citing *Miller v Miller*, 264 Mich App 497; 691 NW2d 788 (2004) (*Miller I*).[1]

The main point of contention regarding marital property was the disposition of the parties' business interests. These included AG Management, a property management company started by defendant before the marriage and subsequently managed by plaintiff for several years before and during the marriage, as well as various holding companies including Bet-Lucy Holdings, LLC, formed by the parties during the marriage to transact real estate. The arbitrator held several hearings on plaintiff's request that a third-party manager be appointed for Bet-Lucy because she believed that there was fraudulent management by defendant of approximately thirty properties held by the company. On August 19, 2021, the arbitrator, after hearing input from the parties and their forensic accountant experts, declined to approve a third-party manager at that time, but charged the parties' experts with providing oversight of AG Management's supervision of Bet-Lucy and ordered that AG Management cooperate with the experts and open their books to them. In addition, the experts were to provide a "look back" evaluation to determine whether wrongdoing occurred. This arbitration award, which also addressed a discovery issue and admonished the parties against employing self-help, was incorporated as an order of the court on September 2, 2021.

On October 29, 2021, the arbitrator appointed Henry Nirenberg to sell 26 properties held by Bet-Lucy. Nirenberg was to advise the parties before any proposal was accepted, and either party could submit an offer equal to or greater than any proposed offer for consideration. Nirenberg was later appointed as the property master by the arbitrator to facilitate asset liquidations as well as the disposition of AG Management and Bet-Lucy after a hearing held on April 25, 2022.

---

[1] This decision of our Court, which stated that under the Domestic Relations Arbitration Act (DRAA) the right to a fair and full hearing must be either provided or waived, *Miller I*, 264 Mich App at 500, was reversed by our Supreme Court in *Miller v Miller*, 474 Mich 27; 707 NW2d 341 (2005) (*Miller II*). The Supreme Court held that the DRAA "does not require that the formality of a hearing in arbitration proceedings approximate that of a hearing in court." *Id.* at 35.

As for the remaining assets and liabilities associated with these and other entities, Nirenberg reviewed dueling proposals from defendant and from Zebulon Ventures, a company owned by plaintiff's brother David Grant, whom plaintiff supported. Grant's proposal sought to purchase Bet-Lucy's remaining assets with several contingencies and did not address debt or AG Management. Defendant's proposal, which Nirenberg favored, addressed both the Bet-Lucy properties and AG Management's debt. That is, defendant would retain 100% interest in AG Management—described by Nirenberg as "underwater"—and negotiate the sale of AG Management's management agreements to a third party. Defendant would also assume AG Management's debt, in exchange for Bet-Lucy. Further, the management contracts of AG Management were to be sold to a third party for not less than $430,000—which was, according to Nirenberg, approximately 20% of its debt. This amount was to be applied to the outstanding obligations for owner draws listed on Schedule 1 (attached to the term sheet). Schedule 1 listed a total of approximately $2.2 million in debt held by AG Management and related entities, including approximately $670,000 in owner draws.

On May 17, 2022, the arbitrator issued a supplemental arbitration award regarding the disposition of AG Management that adopted Nirenberg's May 11, 2022 revised term sheet, which selected defendant's offer with some revisions. The arbitrator indicated that this decision was made following approximately a dozen hearings and conferences regarding the disposition of the parties' businesses and hundreds of e-mail exchanges between counsel, Nirenberg, and the arbitrator.

Plaintiff filed a motion objecting to the May 17, 2022 supplemental arbitration award. In a June 29, 2022 order, the arbitrator denied the motion, rejecting plaintiff's argument that an arbitration hearing should have been held before accepting the revised term sheet, citing his statement in the award that twelve hearings and conferences occurred. The arbitrator likewise rejected plaintiff's argument that the order was entered in error because the arbitrator failed to determine the value of AG Management before awarding it, explaining that the full scope of AG Management had not been awarded and this was an interim award to preserve the asset for ultimate distribution, and that the parties conducted discovery and discussed value with the arbitrator and property master. The arbitrator also rejected plaintiff's request to reopen discovery as an attempt to "start this case all over again with regard to AG Management," as the parties and their experts had access to information to prepare for arbitration. The May 17, 2022 supplemental arbitration award having remained in place, on June 28, 2022, AG Management sold the management contracts to Management Company Holdings, LLC.

On June 7, 2022, observing that the time had come to issue a global opinion on the outstanding issues, the arbitrator directed the parties to submit findings of fact and conclusions of law as to the remaining issues to address in the final award, including property division. Although defendant submitted proposed findings of fact and conclusions of law, plaintiff did not, even after requesting and receiving an extension of time. At that point, besides the business entities that were addressed in the May 17, 2022 supplemental arbitration award, defendant identified four properties remaining in the marital estate, including the marital home in Huntington Woods and properties in Waterford, Lexington, and Pontiac.

After learning that plaintiff had sold three of those properties—the Huntington Woods, Lexington, and Waterford properties (hereinafter "disputed properties")—without his knowledge

on May 31, 2022, defendant filed an emergency motion to freeze sale proceeds, produce sale documents, appoint an attorney to rescind the fraudulent sale, and to hold plaintiff in contempt. Following a June 8, 2022 hearing on the motion, the arbitrator issued a supplemental arbitration award finding that plaintiff violated the October 2020 stipulated status-quo order and mutual injunction when she sold the disputed properties, and that contempt proceedings should be brought against plaintiff before the trial court.[2] The supplemental arbitration award further provided that plaintiff must provide documentation related to the transactions, and that marital-estate funds in the arbitrator's IOLTA were set aside to retain Nirenberg or his associates to undo the transactions. The trial court ordered plaintiff to comply with the supplemental arbitration award, enforcing it with a monetary penalty ($1,000 per day) past the 48 hours plaintiff received to comply.

On July 20, 2022, the arbitrator granted defendant's motion to appoint a receiver of the disputed properties and the trial court entered an order appointing Nirenberg as receiver to effectuate the arbitrator's award. This order also precluded the entities involved in the transactions—Tzedek Company, LLC; Lexiford Properties, LLC; Waterton Properties, LLC—as well as David Wolkinson (the sole member of these entities) from selling the disputed properties or from taking legal action against the receiver with regard to the properties. Not long after, on August 29, 2022, plaintiff filed for Chapter 11 bankruptcy. When the receiver intervened, the bankruptcy court granted relief from the bankruptcy stay to permit the divorce case and associated arbitration and receivership to proceed in Oakland Circuit Court.

The trial court granted the receiver's motion for joinder on December 27, 2022, joining as "joinder-defendants" those entities involved in the disputed properties transactions (Tzedek, Lexiford, and Waterton) along with Wolkinson.[3] The receiver thereafter filed a complaint against the joinder-defendants to quiet title to the properties, recover escrowed proceeds under the Uniform Voidable Transactions Act, enjoin further transfers of property, and for related damages and attorney fees. On August 31, 2023, the joinder-defendant companies filed a counterclaim against the receiver for subrogation, unjust enrichment, and quiet title. On September 21, 2023, Wolkinson, Tzedek, Waterton, and Lexiford filed a third-party complaint asserting fraud and/or breach of contract claims against Old Republic National Title Insurance Company, the company that provided title insurance for each of the properties, David Grant, who partnered with Wolkinson to purchase the properties, and plaintiff. On May 2, 2024, plaintiff moved to compel compliance with the arbitrator's June 29, 2022 order for an accounting and to show cause to compel disclosure by defendant of all marital assets. Defendant opposed the motion.

Meanwhile, the arbitrator issued a final opinion and award on May 6, 2024. The arbitrator observed that he had requested that the parties submit a proposed judgment of divorce, which

---

[2] On March 21, 2023, the parties stipulated that plaintiff be found in contempt "as a result of her malicious, willful, and intentional sale" of the three marital properties and release of escrowed funds, and defendant was awarded damages of $127,000 and a fine of $3,750 which defendant could use as setoffs for distributions of the marital estate.

[3] The trial court later clarified in an order replacing the December 27 order that "the disputed issues which are the subject of the complaint filed on January 6, 2023 shall be removed from the binding arbitration agreement between the plaintiff and the defendant."

defendant did (titled "Consent Judgment of Divorce"), but plaintiff did not; instead, with new counsel, plaintiff requested an accounting and financial information. After further observing that the case had been ongoing for four years, that numerous hearings, conferences, and meetings had occurred, and that the case was ripe for resolution, the arbitrator ruled that defendant's proposed judgment could be entered.

Accordingly, defendant moved in the trial court to confirm the arbitrator's May 6, 2024 opinion and award and for entry of judgment of divorce. Plaintiff responded in opposition. Then, plaintiff filed a motion in the trial court to vacate the arbitration award pursuant to MCL 600.5081, and defendant responded in opposition.

The joinder-defendants also objected to the judgment of divorce insofar as it awarded the disputed properties to defendant "free and clear" of all other claims and requested that the portion of the relief pertaining to the properties be vacated. They also filed a motion to vacate that part of the arbitration award.

The trial court heard oral argument on June 5, 2024 to address the parties' outstanding motions. The court granted plaintiff's motion to compel compliance with the arbitrator's order in part, ordering defendant to provide "all accounting pursuant to the May 2022 Term Sheet to [plaintiff] within seven days" but denying the request for a show-cause order. The trial court also denied defendant's motion to enter the arbitrator's opinion and granted the joinder-defendants' motion to vacate the arbitration award, ordering the arbitrator to amend the arbitration award consistent with the December 27, 2022 order in which the court joined the joinder-defendants to the action and ordered the receiver to file a complaint against the joinder-defendants regarding the disputed properties.

In an effort to comply with the court's order to provide "all accounting pursuant to the May 2022 Term Sheet," defendant's counsel sent a letter to plaintiff's counsel with several attachments, including a seller's closing statement regarding the sale of AG Management's contracts to Management Company Holdings, LLC.

In addition to her filings before the trial court, plaintiff also filed a motion before the arbitrator for correction of errors and omissions in the opinion and award of the arbitrator, requesting that the arbitrator vacate the award and order defendant's compliance with the arbitrator's June 29, 2022 opinion regarding disclosure of assets and liabilities and requested an accounting. On June 11, 2024, the arbitrator issued an opinion and award denying plaintiff's motion for correction of errors and omissions. The arbitrator observed that, despite his request that both parties submit proposed judgments, plaintiff did not, instead hiring another lawyer—her tenth—and "became intent on basically re-litigating this case (even though no related motions were submitted)."

On July 8, 2024, the arbitrator issued an amended opinion and award of the arbitrator regarding pending issues in order to comply with the trial court's June 10, 2024 order regarding the disposition of the disputed properties and to update the case; this would ultimately become the basis for the judgment of divorce. There, the arbitrator also stated that he "received an accounting, as [o]rdered by the [c]ourt." Defendant moved in the trial court to confirm the arbitrator's July 8, 2024 opinion and award and for entry of judgment of divorce.

Plaintiff then filed three motions related to the arbitrator's June 11 and July 8, 2024 awards. Plaintiff filed a motion to vacate the June 11, 2024 award pursuant to MCL 600.5081. Plaintiff filed a motion before the arbitrator for correction of errors and omissions in the amended opinion and award of the arbitrator dated July 8, 2024. Plaintiff also filed a motion to vacate the July award.

The trial court held a hearing on the pending motions on August 14, 2024. The court granted defendant's motion to enter an order confirming the arbitrator's July 8, 2024 opinion and award and entry of judgment of divorce, observing that the arbitrator had complied with its earlier order to remove the disputed properties from the property award and that plaintiff did not file a motion to enforce that order or a motion for an order to show cause. The trial court also denied plaintiff's motion to vacate the arbitrator's award, reasoning as follows:

> The Court finds that the parties entered into a stipulated order under the Uniform Arbitration Act to refer this matter to arbitration. The Court further finds that the Plaintiff has retained several law firms through the pendency of this case and at times has been pro per in this matter. This fact does not absolve the Plaintiff of the duty to continuously litigate her interest. The Court finds that the Plaintiff was unresponsive and did not pursue her interest continuously in this matter. Specifically, the Plaintiff failed to file findings of fact and conclusions of law as requested by the arbitrator and failed to file a proposed Judgment of Divorce as requested by the arbitrator.

> Moreover, the Court finds that the Plaintiff's current counsel was not her attorney at the time that the Plaintiff's interest[s] were not litigated. Current Counsel argues that the Defendant has failed to comply with prior court orders. Counsel for the Plaintiff contends that a proposed Judgment of Divorce could not be filed because prior orders were not complied with. The Court finds that this argument is disingenuous. The Court finds that a new attorney coming into a case, have [sic] to take the case as it is. Counsel for the Plaintiff came into the case after the close of testimony and the proposed judgments were to be considered by the arbitrator.

> The Court finds that the Plaintiff did not argue that the Defendant failed to provide all accounting as ordered on June 10, [2022]. The Plaintiff is now arguing that there are questions related to the accounting provided. The Court finds that the arbitrator found that the Plaintiff's arguments were not compelling and that a Judgment of Divorce can be entered.

> Therefore, IT IS ORDERED that the Plaintiff's motion is denied. The Plaintiff has failed to establish MCL 691.1703(l)(c).

The trial court thereafter entered the judgment of divorce on November 7, 2024. The judgment addressed the disputed properties, with contingencies depending on whether the properties reverted to the parties following the conclusion of the joinder-defendant receivership litigation. It also addressed the parties' business interests that were not already resolved by prior orders. Several businesses that were deemed to have no value or that were established without

marital funds were awarded to defendant. And the remaining debt owed by AG Management per the revised term sheet was deemed a joint obligation of the parties to be paid by defendant, who would receive a 50% setoff against plaintiff's portion of the marital estate. Further, spousal support was mutually barred.

Plaintiff now appeals.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's ruling on a motion to vacate an arbitration award." *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). In other words, no deference is owed to the trial court on the legal issues. See *id.*

The interpretation of contractual language in an arbitration agreement is also reviewed de novo. *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016).

## III. ANALYSIS

## A. JURISDICTION

As an initial matter, defendant argues that the Court lacks jurisdiction to consider this appeal because the judgment of divorce was not a final order under MCR 7.202(6)(a)(i). We agree, but exercise our discretion to treat the filing as an application for leave to appeal and grant leave.

This Court has jurisdiction of an appeal by right filed by an aggrieved party from a final judgment or final order of the circuit court. MCR 7.203. A final judgment or order is "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties." MCR 7.202(6)(a)(i). In an action involving multiple parties,

> an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties, and the order is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties. Such an order or other form of decision is not appealable as of right before entry of final judgment. [MCR 2.604(A).]

In a typical divorce case, the judgment of divorce will often be the "final order" as it "disposes of all the claims and adjudicates the rights and liabilities" of the two parties. MCR 7.202(6)(a)(i). Here, however, other parties were added to the case, the receiver and third-party defendants involved with the disputed properties. Because the judgment of divorce does not resolve the claims involved in the receivership litigation, it is not a final order under the court rule. See *id.* Accordingly, this Court lacks jurisdiction to hear an appeal claimed by right from the divorce judgment.

But "[e]ven if this Court does not have jurisdiction to hear an appeal as of right, this Court may exercise its discretion by treating a party's appeal as an application for leave to appeal, granting leave, and addressing the issues presented on their merits." *In re Attorney General*, 327

Mich App 136, 145 n 2; 933 NW2d 351 (2019), aff'd in part, rev'd in part 506 Mich 997 (2020). Given that any pending issues related to the receivership may be resolved independently of the judgment of divorce, which details contingencies depending on whether the disputed properties revert to either party, we exercise our discretion to treat the filing as an application for leave to appeal, grant leave, and address the merits of this appeal.

## B. ARBITRATION AWARD

Plaintiff contends that the trial court erred by declining to vacate the arbitrator's award. We disagree.

"Domestic-relations arbitration is governed by the specific statutory scheme set forth in the domestic relations arbitration act (DRAA)[, MCL 600.5070 *et seq.*]" *Cipriano v Cipriano*, 289 Mich App 361, 367; 808 NW2d 230 (2010). Parties in a domestic relations proceeding such as divorce may, under the DRAA, stipulate to submit disputed issues to binding arbitration, including, as relevant here, property division. See *id.* "The purpose of arbitration is to avoid protracted litigation, and an agreement to arbitrate will be judicially enforced to defeat an otherwise valid claim." *Id.* at 376.

"Judicial review of arbitration awards is usually extremely limited[.]" *Washington*, 283 Mich App at 671, citing *Konal v Forlini*, 235 Mich App 69, 74; 596 NW2d 630 (1999). "Indeed, . . . a court's review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence." *Washington*, 283 Mich App at 671 n 4 (cleaned up). Section 5081 of the DRAA sets forth four circumstances under which a reviewing court may vacate such an award:

> (a) The award was procured by corruption, fraud, or other undue means.
>
> (b) There was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights.
>
> (c) The arbitrator exceeded his or her powers.
>
> (d) The arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights. [MCL 600.5081(2).]

These circumstances are also codified by court rule in MCR 3.602(J)(2) with respect to arbitration awards generally.

"A reviewing court has three options when a party challenges an arbitration award: (1) confirm the award, (2) vacate the award if obtained through fraud, duress, or other undue means, or (3) modify the award or correct errors that are apparent on the face of the award." *Krist v Krist*, 246 Mich App 59, 67; 631 NW2d 53 (2001). "[T]he party seeking to vacate or modify an arbitrator's award must establish that the arbitrator displayed a manifest disregard of the applicable law[.]" *Id.* at 67. That is, they must show that the error is "so material or so substantial as to have

governed the award, but for which the award would have been substantially otherwise." *Detroit Auto Ins Exch v Gavin*, 416 Mich 407, 443; 331 NW2d 418 (1982).

## 1. EVIDENT PARTIALITY

Plaintiff first contends that there was evident partiality by the arbitrator. See MCL 600.5081(2)(b).

"Partiality or bias that would allow us to overturn an arbitration award 'must be certain and direct, not remote, uncertain or speculative.' " *Bayati v Bayati*, 264 Mich App 595, 601; 691 NW2d 891 (2004), quoting *Belen v Allstate Ins Co*, 173 Mich App 641, 645; 434 NW2d 203 (1988). Receiving an unfavorable ruling is not in and of itself evidence of bias. See *Cain v Mich Dep't of Corrections*, 451 Mich 470, 495-496; 548 NW2d 210 (addressing judicial bias). "Claims that quarrel with a binding arbitrator's factual findings are not subject to appellate review." *Krist*, 246 Mich App at 67.

Plaintiff argues that after the arbitrator requested that the parties submit proposed judgments of divorce, the arbitrator did not adequately respond to her objection that she lacked sufficient information to submit a proposed judgment, as she lacked knowledge as to what defendant did regarding the sale of AG Management's contracts following the June 29, 2022 order. In plaintiff's view, the arbitrator never took action to see that the order was executed; plaintiff asserts that no accounting has ever been provided regarding the sale of AG Management's contracts. Further, plaintiff asserts that the arbitrator ignored her objections to the proposed divorce judgment and that the arbitrator's refusal to address her issues was prejudicial to her rights. Plaintiff faults the arbitrator for effectively "rubber stamp[ing] the one-sided and inequitable order" proposed by defendant. These actions, plaintiff argues, demonstrate that the arbitrator was partial toward defendant.

We disagree that the arbitrator's actions during the case establish evident partiality toward the defendant. We reject plaintiff's argument that the arbitrator refused to address her issues; rather, the record reflects that the arbitrator considered her arguments and did not find them worthy of credence. The arbitrator addressed many of the objections that plaintiff raises again here in the June 29, 2022 award. For example, the arbitrator rejected plaintiff's request to reopen discovery at that point as an attempt to "start this case all over again with regard to AG Management," as the parties and their experts were given access to the necessary information. Nor did the arbitrator believe that plaintiff's current discovery requests were "proportional to the needs of the case," MCR 2.302, given the "voluminous amount of information" already provided. Accordingly, the arbitrator rejected plaintiff's argument that she did not have enough information to inform the disposition of AG Management. This constitutes an unreviewable factual finding. See *Krist*, 246 Mich App at 67.

In rendering his final opinion and award, the arbitrator observed that plaintiff had not submitted a proposed judgment of divorce as he had requested given that the case—which had been ongoing for multiple years with numerous hearings, conferences, and meetings addressing numerous case developments that he outlined, including resolution of discovery issues—had moved toward resolution. Against this backdrop, the arbitrator found it appropriate to accept defendant's proposed judgment in consultation with the revised term sheet, which had addressed

some of the parties' business interests. The record therefore shows that the arbitrator repeatedly addressed and provided reasons grounded in fact for its rejection of plaintiff's arguments. In addition, plaintiffs' suggestion that defendant unilaterally established multiple companies without her consent during the divorce proceedings was dealt with in the judgment, as these companies were awarded to defendant either because they were not marital or had no value—a factual finding outside our purview. See *Krist*, 246 Mich App at 67. Moreover, plaintiff cannot demonstrate bias simply because she received unfavorable rulings. See *Cain*, 451 Mich at 495-496.

We agree with plaintiff that it appears that the arbitrator never addressed her July 22, 2024 motion for correction of errors and omissions pertaining to the arbitrator's July 8, 2024 amended opinion and award, but we do not agree that she is entitled to relief on that basis. Plaintiff's motion explicitly renewed corrections identified in plaintiff's previous May 20, 2024 motion that the arbitrator had previously addressed. The motion also incorporated by reference objections raised in plaintiff's July 2, 2024 motion to vacate, which contained many of the same arguments from plaintiff's May 20, 2024 motion. Finally, the motion objected that no mention was made of defendant's obligation to disclose assets in accordance with the trial court's June 10, 2024 order. However, in his amended opinion and award dated July 8, 2024, the arbitrator indicated that he had received an accounting related to the May 2022 term sheet, which is what the trial court had ordered. The trial court did not compel a full accounting, despite plaintiff's request. Moreover, the motion effectively requested the same relief that plaintiff had previously requested for roughly the same reasons—meaning that it is unlikely that the "award would have been substantially otherwise," *Gavin*, 416 Mich at 443, had the arbitrator decided it. Therefore, we decline to attribute the arbitrator's failure to address this motion as bias displaying "a manifest disregard of the applicable law," *Krist*, 246 Mich App at 67.

Nor do we discern evident bias from the arbitrator's handling of plaintiff's requests for an accounting. In the arbitrator's June 11, 2024 opinion and award denying plaintiff's motion for correction of errors and omissions, the arbitrator observed that plaintiff was attempting to relitigate the case with new counsel rather than complying with his directive to submit a proposed judgment. And, belying plaintiff's claim that no accounting was ever provided, the arbitrator acknowledged that an accounting regarding the May 2022 term sheet, as ordered by the trial court, had been provided. Again, we may not overturn factual findings of the arbitrator. See *Krist*, 246 Mich App at 67. Defendant also argues that the arbitrator failed to address the accounting, but the degree of consideration given to evidence by an arbitrator is not a matter for appellate review. *Belen*, 173 Mich App at 646.

To the extent that plaintiff argues that the arbitrator should have done more to ensure compliance with its orders, it is the party's role to file an appropriate motion to ensure compliance, such as a motion for enforcement or for an order to show cause, rather than the arbitrator's role to enforce his orders sua sponte. See *Washington-Detroit Theater Co v Moore*, 249 Mich 673, 681; 229 NW 618 (1930) ("The court itself does not, of its own motion, enforce its judgments.").

In sum, we see no partiality that is "certain and direct," *Bayati*, 264 Mich App at 601, much less does the record support that the arbitrator "displayed a manifest disregard of the applicable law," *Krist*, 246 Mich App at 67.

-10-

## 2. EXCEEDING POWERS

Plaintiff next contends that the arbitrator exceeded his powers. See MCL 600.5081(2)(c).

"Arbitrators derive their authority to act from the parties' arbitration agreement." *Krist*, 246 Mich App at 62. This Court "has repeatedly stated that arbitrators have exceeded their powers whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Washington*, 283 Mich App at 672 (collecting cases). Accordingly, "a party seeking to prove that a domestic relations arbitrator exceeded his or her authority must show that the arbitrator either (1) acted beyond the material terms of the arbitration agreement or (2) acted contrary to controlling law." *Id.* Whether an arbitrator exceeded their authority is reviewed de novo. *Id.* "A reviewing court may not review the arbitrator's findings of fact, and any error of law must be discernible on the face of the award itself." *Id.* (citations omitted).

Plaintiff first argues that the arbitrator erred by disposing of the disputed properties without explanation or consideration that they are subject to ongoing litigation and titled in the names of third parties. However, this claim is premised on factual inaccuracies, as the judgment of divorce specifically contemplates the disposition of these properties in light of various contingencies that might occur because of the pending receivership litigation. Further, the judgment does not simply award the properties to defendant but explains that defendant must reimburse the marital estate for $375,000, half the value of the properties as established by the properties' sale price, and that plaintiff's share is reduced by amounts owed related to plaintiff's improper transfer of the properties. This distribution is consistent with the June 9, 2022 supplemental arbitration award as well as the stipulated contempt order.[4]

Plaintiff next argues that the arbitrator failed to value AG Management before dividing it, in contravention of Michigan law. In divorce proceedings, the fact-finder "must make specific findings of fact regarding the value of each disputed piece of marital property awarded to each party in the judgment." *Woodington v Shohoohi*, 288 Mich App 352, 364; 792 NW2d 63 (2010). Failing to do so constitutes clear error. *Olson v Olson*, 256 Mich App 619, 627-628; 671 NW2d 64 (2003). But "[t]here are numerous ways in which a [fact-finder] can make such a valuation," *id.* at 627, and findings of fact are inadequate only if they are "not sufficiently specific to enable the parties to determine the *approximate* values of their individual awards by consulting the verdict along with the valuations to which they stipulated," *Woodington*, 288 Mich App at 364 (emphasis added).

To recap, AG Management was awarded to defendant in the May 17, 2022 supplemental arbitration award. This award came about after the arbitrator delegated negotiations concerning the sale of AG Management to Nirenberg as property master. AG Management and Bet-Lucy

---

[4] Because plaintiff does not develop her argument that the arbitrator did not have jurisdiction to dispose of these properties, we decline to address it. See *Badiee v Brighton Area Sch*, 265 Mich App 343, 359; 695 NW2d 521 (2005) ("A party waives an issue when it gives the issue cursory treatment on appeal."). Likewise, plaintiff's argument that the arbitrator was required to provide an accounting of the IOLTA account concerning marital estate assets is abandoned. See *id.*

were subject to competitive bidding—plaintiff supported her brother's Zebulon proposal and defendant submitted his own proposal. Defendant's proposal was ultimately favored by Nirenberg. In providing his recommendation, Nirenberg observed that, "because of the volatility in the entities and the amount of debt associated with each, the resolution must be crafted in a way that protects one of the parties against the potential economic harm caused by the potential default of the other party." The arbitrator adopted Nirenberg's recommendation in the revised term sheet.

By writing in support of the Zebulon offer, plaintiff accepted competitive bidding as a method for valuing and dividing these business assets. Plaintiff may not now complain about the valuation method. Additionally, as stated, there are many ways to value property, *Olson*, 256 Mich App at 627, and plaintiff cites no authority stating that competitive bidding is an impermissible method. Furthermore, the value of AG Management can be discerned from the term sheet and Schedule 1; the entity was determined to be underwater. Schedule 1 listed a total of approximately $2.2 million in debt held by AG Management and related entities, which was to be partially reduced by the sale of management contracts to a third party for at least $430,000. Indeed, the arbitrator later recognized that the accounting for this sale was provided. By awarding Bet-Lucy, which the parties accepted was worth approximately $1.5 million (the amount of the Zebulon offer), to defendant, but also allocating AG Management's sizable debt to defendant, the award balanced Bet-Lucy's assets with AG Management's negative value. We therefore conclude that the award was sufficiently specific to enable the parties determine the approximate value of the awards that pertained to AG Management. See *Woodington*, 288 Mich App at 364. Accordingly, the arbitrator did not exceed his powers, see MCL 600.5081(2)(c), or manifestly disregard applicable law, see *Krist*, 246 Mich App at 67.

### 3. REFUSAL TO HEAR EVIDENCE

Plaintiff next contends that the arbitrator refused to hear evidence material to the controversy. See MCL 600.5081(2)(d).

First, plaintiff argues that the arbitrator erred by failing to hold a hearing after the issuance of its June 29, 2022 opinion. She notes that the parties agreed in their arbitration agreement that

> they are waiving any rights they may have as set forth in *Miller vs. Miller*, 691 NW2d 788 (a copy of which has been provided to the parties), and agree that the Arbitration shall be binding, but may be informal at the Arbitrator's discretion.

Plaintiff points out that our Court's *Miller* decision, *Miller I*, was reversed by the Supreme Court, see *Miller v Miller*, 474 Mich 27; 707 NW2d 341 (2005) (*Miller II*), emphasizing that the Supreme Court's decision removed the requirement for a formal hearing, but still requires that a hearing take place. Plaintiff therefore argues that to the extent the language in the agreement constitutes a waiver, it was simply a waiver of the right to a formal hearing, not the waiver of a right to any hearing.

Admittedly, the language of the agreement is somewhat confusing because it references waiving rights that were subsequently curtailed when the cited opinion recognizing such rights was reversed. That is, although this Court in *Miller I* recognized a right to a formal hearing, see *Miller I*, 264 Mich App at 500, our Supreme Court reversed and held that the DRAA "does not

-12-

require that the formality of a hearing in arbitration proceedings approximate that of a hearing in court." *Miller II*, 474 Mich at 35.

"[W]hen interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation." *Altobelli*, 499 Mich at 295. "Our primary task is to ascertain the intent of the parties at the time they entered into the agreement, which we determine by examining the language of the agreement according to its plain and ordinary meaning." *Id.* In the agreement at issue in this case, in combination with the waiver of rights under *Miller I*, the parties agreed to binding but informal (at the arbitrator's discretion) proceedings. Both *Miller* opinions recognized that parties could agree to forgo a formal hearing. See *Miller I*, 264 Mich App at 500, 508; *Miller II*, 474 Mich at 33 (recognizing that "[t]he appropriate structure for an arbitration hearing is best decided by the parties and the arbitrator"). By referencing *Miller I* in combination with the statement that proceedings may be informal, the language appears to mean that the parties waived a formal hearing in favor of more flexible proceedings. Thus, although under current law, there is no *right* to a full and fair hearing under the DRAA and therefore the parties need not have disclaimed such a right, a plain reading of the language reveals that the parties were expressing their intent to proceed informally. We therefore reject plaintiff's argument to the extent she argues that she was entitled to a formal hearing.

Regarding plaintiff's argument that she was entitled to a hearing, even if informal, after the arbitrator's June 29, 2022 opinion, we observe that plaintiff received multiple hearings in this case. The arbitrator held over a dozen hearings and conferences. The arbitrator also issued multiple rulings addressing plaintiff's motions, even if a hearing was not held. Declining to hold additional hearings does not equate with a refusal to hear evidence *material* to the controversy. Instead, as discussed, the arbitrator explicitly considered and rejected plaintiff's arguments in its rulings (except for plaintiff's objections to the proposed divorce judgment, which, as discussed, does not entitle her to relief). The arbitrator observed as early as June 7, 2022 that the case was ripe for resolution, and noted in the final award that the case had been ongoing for multiple years and that numerous hearings, conferences, and meetings had occurred to address the issues.

On this record, therefore, we find no basis to overturn the arbitration award simply because an additional hearing was not held after the arbitrator's June 29, 2022 opinion. We decline to set aside the arbitration award when the arbitrator exercised his discretion to not hold additional hearings under the circumstances, as this does not amount to "a manifest disregard of the applicable law," *Krist*, 246 Mich App at 67.

## C. JUDGMENT OF DIVORCE

Plaintiff also argues that the trial court erred by granting defendant's motion for entry of judgment of divorce. We disagree.

Although many of plaintiff's arguments overlap with those concerning the arbitration award addressed above, plaintiff also raises a due process argument. Specifically, plaintiff argues that the entry of the judgment violated her right to due process because she did not agree to a consent judgment. Plaintiff cites *Mich Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 484; 637 NW2d 232 (2001), for the proposition that a consent judgment is a contract that may not be entered without the parties' agreement. Although that is accurate in the abstract, under the circumstances

of this case plaintiff's argument lacks merit. Although initially styled as a consent judgment when submitted to the arbitrator as a proposed judgment by defendant , the judgment entered by the court was titled "judgment of divorce," not "consent judgment of divorce." Plaintiff agreed to binding arbitration of all issues in the divorce and that a judgment of divorce comporting with the arbitrator's decisions would enter—which is what occurred. Accordingly, plaintiff's consent was unnecessary and no due process violation occurred.

## IV. CONCLUSION

In sum, we find no basis to overturn the arbitrator's award on the ground that the arbitrator displayed evident partiality, exceeded his powers, or refused to hear evidence material to the controversy. See MCL 600.5081(2)(b)-(d). Nor is there merit to plaintiff's argument that her due-process rights were violated.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi